Defendant Mark Tomko has appealed from his conviction and sentence in the Akron Municipal Court. He has raised three assignments of error in which he challenges his detention and arrest, as well as the results of his breath-alcohol test. This Court affirms the judgment of the trial court.
 I.
On November 9, 1997, Defendant's vehicle was stopped at approximately 3:30 a.m. by Trooper Kenneth Collins of the Ohio State Highway Patrol. The trooper recorded the speed of Defendant's car at 75 miles per hour in a 65 mile-per-hour zone. Upon approaching the car, Trooper Collins noticed a "mild odor" of alcohol. The trooper asked Defendant if he had been drinking, and Defendant said that he had consumed two beers that evening. Defendant also claimed that he had had no sleep during the previous 24 hours.
Trooper Collins ordered Defendant out of his car and performed several "field sobriety tests" to determine if Defendant was under the influence of alcohol or drugs. He performed the Horizontal Gaze Nystagmus (HGN) test, which registers involuntary eye movement, signaling possible impairment. According to Trooper Collins, Defendant exhibited six "indicators" during the HGN. That alone, Trooper Collins testified, was evidence of impairment.
Trooper Collins also administered the "walk and turn" and the "one-legged stand" tests. Defendant exhibited two "indicators" on each of those tests. Specifically, Defendant had trouble counting, put his foot down, did not touch heel to toe when walking, and used his arms for balance. Based on Defendant's performance on those tests, Trooper Collins took him to the Ohio State Highway Patrol headquarters, where Defendant submitted to a breath test to determine his breath-alcohol content. His breath registered 0.149 grams of alcohol per 210 liters of breath.
Defendant was charged driving under the influence of alcohol or drugs, a violation of R.C. 4511.19(A)(1); driving with a prohibited breath-alcohol content, a violation of R.C.4511.19(A)(3); and speeding, a violation of R.C. 4511.21. He moved to suppress the evidence against him, claiming that it was obtained as a result of an unlawful detention. He also argued that the breath-alcohol test failed to comply with Department of Health regulations and that the results must, therefore, be suppressed.
On June 30, 1998, the trial court ruled that the trooper had probable cause to arrest Defendant and that the breath testing procedures substantially complied with Department of Health regulations. It, therefore, denied Defendant's motion to suppress.
Defendant entered a plea of no contest to driving with a prohibited breath-alcohol content, and the trial court dismissed the remaining counts. The trial court found him guilty, sentenced him, then stayed execution of that sentence pending appeal.
Defendant has asserted three assignments of error. His first two assignments of error are related and will be addressed together[1]:
 II. A. The trial court erred in denying the Defendant's motion to suppress because the Ohio State Trooper lacked reasonable suspicion to detain the Defendant to administer the field sobriety tests.
 The trial court erred in denying the Defendant's motion to suppress since there is insufficient evidence to support a finding that there was probable cause to arrest the Defendant for operating a motor vehicle while under the influence of alcohol.
Defendant has claimed that his constitutional rights were violated when he was ordered out of his car to submit to the field sobriety tests and when he was taken to the State Highway Patrol headquarters to perform the breath test. Essentially, there were three stages during the traffic stop and arrest when his constitutional rights could have been violated: the initial stop itself, the detention to conduct the field sobriety tests, and the arrest. We will address each in turn.
1. The Initial Stop.
Although Defendant does not necessarily challenge the initial stop, this Court notes that it was not improper. An officer may stop a vehicle to investigate a suspected violation of a traffic law. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12. In this case, Defendant was traveling 75 miles per hour in a 65 mile-per-hour zone. He apparently does not dispute this. The initial stop to investigate the possible speeding violation was not, therefore, improper.
2. The Detention to Conduct the Field Sobriety Tests.
Defendant has argued that he exhibited no signs of alcohol impairment allowing Trooper Collins to order him from his vehicle and conduct field sobriety tests. Instead, according to him, Trooper Collins based his decision to conduct the field sobriety tests only on a "mild odor" of alcohol. Defendant has argued that the smell of alcohol alone does not constitute reasonable suspicion of alcohol impairment and that, consequently, his prolonged detention was unlawful.
When an appellate court reviews the propriety of an investigatory stop, it must consider the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. Probable cause is not necessary to conduct a field sobriety test. State v. Gustin (1993), 87 Ohio App.3d 859,860. Rather, reasonable suspicion of criminal activity will support further investigation. Id. Essentially, reasonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act. State v. Shook (June 15, 1994), Lorain App. No. 93CA005716, unreported, at 4. In addition, during a traffic stop, if an officer encounters "additional specific and articulable facts" giving rise to a reasonable suspicion beyond that which prompted the stop, the officer may continue to detain the individual to investigate those new concerns. Id. at 7.
As noted above, the initial traffic stop was not improper. During that stop, Trooper Collins observed factors, beyond those that prompted the stop, that gave him reason to detain Defendant to conduct the field sobriety tests. The trooper testified that Defendant smelled of alcohol and had bloodshot eyes. This Court concludes that those two "additional specific and articulable facts" established reasonable suspicion to investigate Defendant's possible alcohol impairment.
Defendant has relied upon State v. Gustin (1993), 87 Ohio App.3d 859, and State v. Taylor (1981), 3 Ohio App.3d 197, to argue that Trooper Collins had no reason to conduct the field sobriety tests. In Gustin, the Defendant was given an HGN test after he had driven his car into a utility pole to avoid hitting a deer. That Defendant did not smell of alcohol and did not have bloodshot or glassy eyes. He did admit to drinking "one beer," but the court concluded that that statement was made after the HGN test had been administered. Concluding that the officer had no reasonable suspicion to administer the field sobriety test, it affirmed the trial court's granting of a motion to suppress. In this case, however, Defendant had bloodshot eyes and smelled of alcohol. Those factors, which did not exist in Gustin, supported the trooper's prolonged detention to conduct the field sobriety tests.
In Taylor, supra, the Defendant was stopped for speeding. The officer on the scene noticed a smell of alcohol about the Defendant. The court held that, based on those factors alone, the officer had no probable cause to arrest Defendant and administer a breath test. That case did not deal with reasonable suspicion to administer field sobriety tests and is, therefore, inapplicable to this case.
The combination of Defendant's bloodshot eyes, a smell of alcohol, and his admission that he had consumed two beers was sufficient to provide Trooper Collins with reasonable suspicion to detain Defendant to investigate a possible violation of Ohio's laws prohibiting the operation of a motor vehicle while under the influence of alcohol. See, e.g., State v. Toler (Jan. 30, 1998), Clark App. No. 97 CA 47, unreported, 1998 Ohio App. LEXIS 232, at *6-7 ("the strong odor of alcohol alone is sufficient to provide an officer with reasonable suspicion of alcohol impairment," such that field sobriety tests are warranted); State v. Blackburn
(1996), 115 Ohio App.3d 678 (officer administered field sobriety tests after noticing an odor of alcohol and after Defendant admitted to consuming "a few beers"); Columbus v. Anderson
(1991), 74 Ohio App.3d 768 (Defendant's car's speed of 72 in a 55 miles-per-hour zone, a moderate odor of alcohol, and the time of day warranted further investigation by the arresting officer). Accordingly, Defendant's detention was not improper.
3. The Arrest.
Defendant has argued that Trooper Collins lacked probable cause to arrest him for driving under the influence. This Court has previously held that "[p]robable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent man in believing that an offense was committed." State v. Filler (1995), 106 Ohio App.3d 731, 734, quoting Barberton v. Smith (Feb. 10, 1988), Summit App. No. 13272, unreported, at 3. Because this Court held that the detention to conduct the field sobriety tests was not improper, Trooper Collins could have relied on the results of those tests to determine whether Defendant was under the influence of alcohol.
Trooper Collins stated that Defendant exhibited six "indicators" on the HGN test. According to him, that alone is evidence of impairment. Defendant has argued that his performance on the HGN test was a result of his lack of sleep. Even if that were true, he also exhibited two "indicators" each on the "walk and turn" and "one-legged stand" tests.
Defendant has pointed to an admission by Trooper Collins that "medical problems" would account for a poor performance on those tests. Defendant failed to introduce any evidence, however, that he suffered from a medical problem. Consequently, Trooper Collins reasonably concluded that Defendant's performance on the field sobriety tests was the result of alcohol impairment.
In conclusion, Defendant's bloodshot eyes, his odor of alcohol, his admission that he had consumed two beers, and his performance on the field sobriety tests provided Trooper Collins with probable cause to believe that Defendant was driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1). Defendant's arrest was not unlawful. See State v. Medcalf (1996),111 Ohio App.3d 142, 148. Consequently, his first and second assignments of error are overruled.
 B.
Defendant's third assignment of error is:
 The trial court erred in denying Defendant's motion to suppress the results of the [breath-alcohol] test because the testing procedure was not in substantial compliance with the Department of Health regulations.
 Defendant has argued that the trial court improperly failed to grant his motion to suppress the results of the blood alcohol concentration ("BAC") test administered to him following his arrest. This Court disagrees.
1.
The legal framework of a challenge to the admissibility of BAC tests in Chapter 4511 offenses has not been well defined by statute, and case law has not approached it in a structured manner. Nevertheless, the Ohio Supreme Court has provided the necessary groundwork to open the analysis. In State v. French (1995), 72 Ohio St.3d 446, 451-52, the Ohio Supreme Court stated that a defendant may claim that the results of his or her BAC test should be excluded: (1) because the State failed to properly comply with the express regulatory protocols issued by the Department of Health that govern breath-test procedures; or (2) because some fact existed in his or her case that rendered the results of his or her breath test inaccurate, unreliable, or otherwise invalid under the Ohio Rules of Evidence. The French dual challenge system may be applied at several stages through out the prosecution. This Court will address each stage in turn.
Pretrial Statutory and/or Regulatory Challenges
As a general rule, scientific evidence requires the proper evidentiary foundation to be admitted at trial. Evid.R. 702(C). Nevertheless, when the General Assembly enacted R.C. 4511.19, it determined "that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule," and that the Director of Health, not the courts, possesses the discretionary authority for adoption of appropriate tests and procedures, including breath test devices.State v. Vega (1984), 12 Ohio St.3d 185, 188-189; State v. Witten
(1990), 67 Ohio App.3d 135, 140 ("A determination of appropriateness for the methods of analyzing bodily substances, approved by the Director of Health, is a legislative rather than a judicial function.") Thus, R.C. 4511.19(D) replaced the common law and, in present form, announces the foundational requirements of BAC tests in Chapter 4511 prosecutions. Newark v. Lucas
(1988), 40 Ohio St.3d 100, 102-03; Cincinnati v. Sand (1975),43 Ohio St.2d 79, 84-86; State v. Ulrich (1984), 17 Ohio App.3d 182,192-93; see, also, State v. Dowd (1989), 63 Ohio App.3d 610. R.C.4511.19(D) provides in pertinent part:
 In any criminal prosecution * * * for a violation of this section, * * * the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance withdrawn within two hours of the time of the alleged violation.
* * *
 Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143[3701.14.3] of the Revised Code.
In order to promote the efficient prosecution of R.C. 4511.19
misdemeanors, the General Assembly declared that the common law, evidentiary foundational requirements for scientific evidence need only be established if a defendant objects and requests the trial court to ensure compliance by the State. Thus, any statutory and/or regulatory provision not specifically challenged in a motion to suppress is deemed satisfied. French, 72 Ohio St.3d at paragraph one of the syllabus; State v. Cooper (1997), 120 Ohio App.3d 284,289; State v. Luhrs (1990), 69 Ohio App.3d 731, 736. If a defendant fails to file a motion to suppress, the State's obligation to provide an evidentiary foundation is waived and the BAC test result is presumed admissible.[2]
This statutory arrangement created a burden shifting device as to the foundational requirements of BAC tests. If a defendant believes compliance with R.C. 4511.19(D) or any applicable Department of Health regulation is in issue, he or she bears the initial burden and must file a timely motion to suppress specifically stating the regulation(s) being challenged.[3]
In that way, a defendant places both the court and the State on notice regarding the regulation he or she wishes to challenge.[4]
Once a defendant does challenge a BAC test due to an alleged violation of R.C. 4511.19 or a specific regulation, the burden shifts and the State must demonstrate its compliance with the specified provision. Of course, the State may shift the burden immediately back to the defendant by showing strict, technical compliance with the challenged regulation. That higher level of regulatory compliance, however, is not necessary. See State v.Plummer (1986), 22 Ohio St.3d 292, at syllabus.
It is well established that, once a defendant has challenged the foundational evidentiary requirements of a BAC test, the State need only demonstrate substantial compliance with the Ohio Revised Code or the Ohio Administrative Code. Id.; State v. Porter
(1992), 76 Ohio App.3d 798, 801; State v. Chase (1991), 74 Ohio App.3d 15,17. In Plummer, the Ohio Supreme Court reasoned that strict compliance is not always realistically or humanly possible.Plummer, 22 Ohio St.3d at 294. Accordingly, rigid compliance is not a prerequisite to the admissibility of BAC test results.[5] Id., citing State v. Steele (1977), 52 Ohio St.2d 187. This permits leeway for substantial compliance, and at the same time remains consistent with the legislature's determination that BAC test results meet the foundational scientific evidence requirements if the Code provisions are followed.
Once the State has demonstrated compliance, strict or substantial, a rebuttable presumption of reliability and admissibility arises and the burden shifts back to the defendant. The defendant must then demonstrate that he or she would suffer prejudice rendering the result of the BAC test inevitably inaccurate, unreliable, or otherwise invalid. See Porter,76 Ohio App.3d at 801, citing State v. Plummer (1986), 22 Ohio St.3d 292, at syllabus. Defining the extent of this burden has caused some confusion in the courts of appeals.
Once the State demonstrates compliance, either strict or substantial, the issue is not limited to whether the defendant can show prejudice caused by anything less than strict, technical compliance with the Department of Health regulation. Rather, this Court finds the issue to be whether the defendant can show anyprejudice, including prejudice caused by the scientific inaccuracy, unreliability, or invalidity of the test results under all the facts and circumstances of the case, that rendered those test results inaccurate. Accord French, 72 Ohio St.3d at 452;State v. George (1994), 98 Ohio App.3d 371, 376, fn. 3. Such terms embody the fundamental doctrines upon which the rules of evidence are founded. Therefore, this Court concludes a showing of "any prejudice" necessarily includes objections rooted in the Ohio Rules of Evidence.[6]
b. Pretrial Evidentiary Challenges
A pretrial attack on the admissibility of a BAC test result may come in two forms: (1) by demonstration of prejudice in a motion to suppress/motion in limine, or (2) by a separate challenge based on evidentiary principles styled a motion in limine. This is not to say such a pretrial attack must be maintained separately or even at all. This Court believes anyevidentiary challenge may follow a denial of a motion to suppress or be contemporaneous with a defendant's motion to suppress. However, if the defendant is not asserting any statutory or regulatory deviation, the appropriate pretrial action is a motion in limine.[7]
c. Evidentiary Challenges at Trial
As previously noted, if a defendant fails to move for suppression on grounds of statutory or regulatory violation, he or she has waived his or her right to object due to lack of scientific foundation. Thus, no challenge to the admissibility of a BAC test based on the State's failure to comply with statutory and/or regulatory code provisions may be sustained at trial. The defendant has not, on the other hand, waived his or her right to protest the admission of the BAC test results if it fails to meet standards established by the Ohio Rules of Evidence. Likewise, if a defendant's motion to suppress and/or motion in limine is ultimately denied, his or her avenues of recourse are not entirely foreclosed. Much like the Ohio Supreme Court in French, this Court concludes that a defendant always has available challenges based on the Ohio Rules of Evidence. Accord French,72 Ohio St. 3d at 452. If a defendant's pretrial motions are denied, he or she may still object on evidentiary grounds at trial. Id. at 452. Thus, the ultimate issue in any circumstance, pretrial or trial, is whether the facts of a particular case establish the inaccuracy, unreliability, or invalidity of the BAC test result by a preponderance of the evidence.
In the case at bar, Defendant was convicted of violating R.C.4511.19(A)(3). That section prohibits a person from operating a vehicle within the state if that "person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath." Defendant has contested the admission of his BAC results establishing his blood alcohol content at 0.149, clearly above the statutory limit. He has asserted that the State failed to comply with statutory obligations and their corresponding regulatory formalities. This Court disagrees.
Specifically, he has argued the State should not have approved the solution used to calibrate the instrument producing his BAC test results, and thus violated Ohio Administrative Code3701-53-04(A)(1). That section provides:
 An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health. An instrument check is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution.
At the suppression hearing, the State introduced the certificate of approval for Batch No. 96902, which was the solution used to calibrate the machine that administered Defendant's breath test. On its face, that certificate met the Ohio Administrative Code requirement that the ethyl alcohol solution used to calibrate the breath-testing machine be approved by the director of the Department of Health. Thus, the State was not even required to argue substantial compliance.[8] The State successfully rebutted Defendant's attack as to statutory and regulatory violations by strict, technical compliance, and therefore, had introduced the proper evidentiary foundation as to the BAC test results. To that extent, the trial court properly overruled Defendant's motion to suppress.
The analysis, however, does not end there. Defendant still had an opportunity to present challenges based solely on the Ohio Rules of Evidence. In his pretrial motion and appellate brief, Defendant has argued that Batch No. 96902 was scientifically unreliable due to the State's failure to follow the dictates of the Ohio Administrative Code. In other words, the BAC test results should not have been admitted due to their underlying lack of scientific reliability and evidentiary trustworthiness. Although these assertions were interwoven with his regulatory challenge and camouflaged in a web of arguments concerning the Ohio Administrative Code, these valid contentions were set forth and shall be examined.
He has claimed that the BAC Datamaster used to administer his breath test had been calibrated with an ethyl alcohol solution called Batch No. 96902. Batch No. 96902 was manufactured by a company located in North Carolina. The record shows that Dr. Craig Sutheimer, the Chief of the Alcohol Testing Program for the Ohio Department of Health, recently testified that Batch No. 96902 was marked with an inaccurate alcohol content. While the certificate placed the target value, i.e. the content, at 0.100 grams of alcohol, Dr. Sutheimer testified that independent testing established the true target value to be 0.099. As a result, Defendant has argued that the use of Batch No. 96902 to calibrate the instrument that administered his breath test was improper and rendered the test result inaccurate. Hence, he has contended that its admission at trial was error. This contention is without merit.
As noted above, once the State demonstrates compliance with a challenged regulation, the issue becomes whether a defendant can show by a preponderance of the evidence that he or she was prejudiced because the results of his or her breath test were not accurate. In this case, although defendant has demonstrated that Batch No. 96902 was not marked with an accurate target value, he has failed to show prejudice resulting from that defect.
The Third District Court of Appeals has addressed Dr. Sutheimer's deposition testimony regarding Batch No. 96902 and has concluded that, although the target value provided by the manufacturer for Batch No. 96902 was incorrect, in certain circumstances, the use of that solution is not improper. State v.Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported, 1998 Ohio App. LEXIS 6198, at *16. The court in Miller applied an abuse of discretion standard during its analysis of the case and concluded that, absent an abuse of discretion on the part of the director of the Department of Health in approving the solution, the results of a breath test may be admitted. This Court disagrees with the abuse-of-discretion standard applied by theMiller court and, instead, believes that scientific evidentiary standards are appropriate in situations involving evidentiary challenges to the admission of alcohol concentration results.[9] Nonetheless, while this Court chooses to apply a different standard than the court in Miller, the results are the same.
The court in Miller held that the use of Batch No. 96902 to calibrate a breath testing instrument is not improper if the 0.001 gram difference between the target value marked by the manufacturer and that solution's true alcohol content is taken into account when the instrument is calibrated. To calibrate a breath testing instrument, the ethyl alcohol solution is run through the instrument and, as noted above, must return a reading equal to the alcohol content of that solution or within 0.005 grams of that alcohol content. O.A.C. 3701-53-04(A)(1). If the calibration test result is not in that range, the instrument must be taken out of service. Id. However, if the 0.001 gram difference is taken into account, the difference will not affect the calibration test result and render the instrument unusable. Therefore, given that the actual alcohol content of Batch No. 96902 was 0.099 grams, rather than the 0.100 grams provided by the manufacturer, if, during the calibration test, the machine returned a result between 0.104 and 0.094 grams of alcohol, then it was properly calibrated and defendant suffered no prejudice by the use of that improperly-labeled solution. See Miller, at *16. This takes into account the difference between the value provided by the manufacturer (0.100 grams) and the true value of the solution (0.099 grams). If, on the other hand, during calibration, the machine returned 0.105 grams or higher, then the machine would not have been properly calibrated, because that result is 0.006 grams over the true value of the test solution, and therefore, taken out of service pursuant to Ohio Administrative Code 3701-53-04(A)(1).
In this case, although Defendant demonstrated that Batch No. 96902 was marked with the target value, he has failed to demonstrate by a preponderance of the evidence that he would suffer prejudice as a result of the use of that solution. Defendant did not introduce any evidence showing the results of any calibration test that had been performed on the machine prior to his breath test. Consequently, this Court cannot conclude whether the error in Batch No. 96902 was taken into account during the calibration of the machine. This Court cannot, therefore, conclude that the use of Batch No. 96902 prejudiced defendant such that his motion to suppress should have been granted. Defendant's third assignment of error is overruled.
 III. In conclusion, Defendant's stop, detention, and arrest were not improper. Furthermore, the admission of the results of his BAC test was not incorrect. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE FOR THE COURT WHITMORE, J.
 CONCURS
BAIRD, P.J.
SLABY, J.
CONCUR IN JUDGMENT ONLY
[1] Defendant has asserted rights pursuant to theFourth Amendment to the United States Constitution and Article I, Section14, of the Ohio Constitution. This Court notes that the two provisions are co-extensive and that, therefore, the protections provided by the Ohio Constitution are no greater than those provided by the federal constitution. State v. Kirby (Feb. 11, 1998), Summit App. No. 18432, unreported, at 3, fn. 1, citingState v. Robinette (1997), 80 Ohio St.3d 234, 239. Consequently, a conclusion that Defendant's rights were not violated by one of those constitutional provisions means that his rights were not violated by the other constitutional provision.
[2] "Because Crim.R. 12(B)(3) applies to all charges under R.C. 4511.19, a defendant charged under R.C. 4511.19(A)(1) through (4) who does not challenge the admissibility of the chemical test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial" French, 72 Ohio St.3d at paragraph one of the syllabus. Moreover, failure by a defendant to move for suppression bars challenge at trial relating to the State's failure to follow a specific provision of the Revised Code or the Ohio Administrative Code.
This waiver does not, however, inhibit the defendant's right to make appropriate evidentiary challenges as to the underlying admissibility of the test results if, for example, such is lacking in scientific reliability or is irrelevant. Id. at 452. Such evidentiary challenges addressing points of law not expressly and specifically governed by R.C. 4511 or the Ohio Administrative Code are not waived and may be made either by a motion in limine or by timely objection at trial.
[3] A defendant charged with a violation of R.C. 4511.19 when making this type of pretrial objection is limited to a motion to suppress. Id. at 451, citing State v. Ulis (1992), 65 Ohio St.3d 83,85 and Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3-4.
[4] Policy dictates that the defendant have this initial obligation to provide notice to the State concerning the specific regulation he or she wishes to challenge. To hold otherwise and to require the State to prove before every trial that it had complied with every regulation would be inefficient, cause unnecessary delays and would be counter to the legislative purpose behind R.C. 4511.19(D).
[5] This Court notes that the State is required to demonstrate substantial compliance with only those regulations that are directly put in issue by the Defendant's motion to suppress. SeeDefiance v. Kretz (1991), 60 Ohio St.3d 1, 3; see, also, Luhrs,69 Ohio App.3d at 736.
[6] If, in response to a showing of strict or substantial compliance, a defendant chooses to assert prejudice because the test is otherwise inadmissible under the Ohio Rules of Evidence, as discussed infra note 7, the defendant may (1) file a motion in limine or (2) wait and object at trial. A motion in limine will afford the State notice of such arguments, or in the alternative, an opportunity to respond in writing prior to a ruling by the court. In other words, if the defendant files a motion to suppress the BAC test results because the State failed to follow the statute and the State in turn demonstrates substantial compliance, the defendant may, if he or she so chooses, file his or her motion in limine arguing evidentiary grounds if the State is given notice or a reasonable opportunity to respond.
[7] Fine lines exist between a motion in limine and a motion to suppress when a defendant attempts to prevent the admission of BAC test results against him. In a Chapter 4511 prosecution, a motion to suppress relates only to challenges regarding the State's failure to follow statutory or regulatory protocol. Kretz,60 Ohio St. 3d at 4 ("the traditional distinction between a motion to suppress based upon a constitutional challenge and a motion in limine does not work a bright-line rule where the motion to suppress is directed to breathalyzer test results based on a failure to comply with ODH regulations"). In other words, the State obtained the BAC test results without meeting the statutory or regulatory requirements, and thus, should be excluded.
On the other hand, a motion in limine is preliminary in nature, cannot be immediately appealed and pertains to all remaining attacks on the BAC test result. It is a device used to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial that curative instructions cannot prevent a predispostional effect on the jury. French, 72 Ohio St.3d at 449, quoting Black's Law Dictionary (6 Ed. 1990) 1013. If a judge grants a defendant's motion in limine, the court is still at liberty to change its ruling on the disputed evidence at trial. Kretz, Ohio St.3d at 4.
The Kretz court held that "a pretrial motion to suppress is the proper procedure for challenging breathalyzer test results when a defendant is charged with a violation of R.C. 4511.19(A)(3)." Id.
at 5. It is important to note, however, that in Kretz the defendant was challenging the BAC test results based on the State's failure to follow Ohio Department of Health regulations.Id. at 4; French, 72 Ohio St.3d at 451. Thus, a motion to suppress is the appropriate action when the State fails to follow the statutory and regulatory guidelines. Kretz,60 Ohio St.3d at 4-5; French, 72 Ohio St.3d at 450-451. If the defendant is challenging the underlying scientific validity of the test without reference to R.C. 4511.19(D) and employs only the Ohio Rules of Evidence as his or her sword, the proper motion is one in limine. The latter circumstance should present itself rarely in pretrial matters as challenges to the admissibility of BAC test results generally are brought asserting violations of the relevant statutory and regulatory provisions.
[8] A substantial compliance argument is only appropriate where the challenged conduct specifically relates to areas addressed by statute or regulation. For example, if the certificate had been issued, but inadvertently not signed. Here, Defendant attempts to go behind the face of the certificate and question its scientific reliability. Such an attack is appropriately couched in an evidentiary challenge either by motion in limine or by objection at trial.
[9] This Court recognizes that the Director of Health has discretion in establishing the appropriate methods for chemically analyzing a person's blood, urine, breath or other bodily substance in order to ascertain alcohol content. R.C. 3701.143. However, the Director of Health does not have the authority to supercede the Ohio Rules of Evidence and determine their application in a court. Any attempt by the legislature to exercise a judicial power or to limit or encroach upon the courts in the exercise of their inherent powers is an unconstitutional violation of the principle of separation of powers. 20 American Jurisprudence 2d (1995), Courts, Section 78-79. 16A American Jurisprudence 2d (1998), Constitutional Law, Section 326.