The STATE of Ohio, Appellee,

v.

PORTER, Appellant.

[Cite as *State v. Porter* (1992), 76 Ohio App.3d 798.]

Court of Appeals of Ohio,
Gallia County.

No. 91CA15.

Decided Jan. 20, 1992.

*Douglas Cowles*, Gallipolis City Solicitor, for appellee.

*William D. Conley*, for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Gallipolis Municipal Court of Gallia County, following a bench trial, finding defendant-appellant Harold L. Porter, Jr. guilty of driving under the influence of alcohol in violation of Gallipolis City Ordinance 333.01(a)(1) and (3).[1] Appellant assigns the following error:

"The trial court committed prejudicial error in admitting the test results of the urine sample of defendant."

The record reveals the following pertinent facts. On November 9, 1990, appellant was involved in an accident wherein appellant's Jeep rear-ended the car in front of it. Gallipolis Police Officers James Taylor and Clinton Patterson arrived on the scene and Officer Patterson identified appellant as the driver of the Jeep based, in part, upon appellant's admission of operating the Jeep. While completing the accident report, Officer Taylor noticed a strong odor of alcohol about the appellant and that he seemed lethargic in his

---

1. Gallipolis City Ordinance 333.01 reads as follows:

"(a) *Operation Generally*. No person shall operate any vehicle within the Municipality, if any of the following apply:

"(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse;

"(2) The person has a concentration of ten-hundredths of one percent (0.10%) or more by weight of alcohol in his blood;

"(3) The person has a concentration of ten-hundredths of one percent (0.10) of one gram or more by weight of alcohol per 210 liters of his breath;

"(4) The person has a concentration of fourteen-hundredths (0.14) of one gram or more by weight of alcohol per 100 milliliters of his urine. (ORC 4511.19)"

The Uniform Traffic Ticket citation charged violations of both Sections 333.01(a)(1) and (a)(3). The judgment entry found appellant guilty of violations of (a)(1) and (a)(3). The factual averments on the ticket charging (a)(3) averred, "Operated a motor vehicle under the influence of alcohol and/or drug of abuse and had a concentration of .14 of 1 gram or more by wt. of alcohol per 100 ml urine."

No evidence was introduced on the (a)(3) charge at trial—only on the (a)(4) offense. We will therefore presume throughout that where (a)(3) is mentioned, (a)(4) was intended.

motions. Further, the officer noted that appellant would not face him while answering questions and exhibited "a certain amount of slurred speech."

Officer Patterson was then called over to administer the gaze nystagmus test and found that "all six indicators were present." Based upon their opinion that appellant was under the influence of alcohol, appellant was placed under arrest and transported to the police station. At the police station, appellant gave a urine sample within forty-five to sixty minutes after the arrest.

Rather than promptly sending the sample for analysis, Officer Patterson placed the sample in the refrigerator, where it remained for approximately seventy-five days until it was sent to the Department of Health and received by that department on January 22, 1991. During the trial, Officer Patterson testified that the urinalysis results from the Department of Health showed that appellant's urine sample contained .31 grams of alcohol per liter of urine.[2] Appellant objected to admission of the urinalysis results on the grounds that there was no testimony to corroborate that of Officer Patterson on the collecting and handling of the sample and that it was seventy-five days before the analysis was conducted. The court overruled appellant's objection and, on February 18, 1991, found appellant guilty of driving under the influence of alcohol in violation of Gallipolis City Ordinance 333.01(a)(1) and (3).

The thrust of appellant's argument on appeal is that the court erred in admitting the urinalysis results because the urinalysis was not performed until seventy-five days after the sample was collected. Appellant relies on *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, arguing that the delay of seventy-five days between the time the sample was collected and the time the sample was analyzed was not in substantial compliance with the regulations set forth in Ohio Adm.Code 3701–53–05(F).[3]

---

**2.** The person conducting the test for the Department of Health was not called as a witness. No objection was made to introduction of the test results on that ground.

**3.** Ohio Adm.Code 3701–53–05 provides, *inter alia,* as follows:
"(D) Urine shall be deposited into a clean glass or plastic container which shall be capped or stoppered. The individual who collects the urine sample shall add one 'Cambridge Chemical Products Sodium Fluoride–Thymol (SFT)' tablet to the sample at the time of collection and shall record that the tablet was added. The collection of a urine specimen must be witnessed to assure that the same can be authenticated.
"(E) Blood and urine containers shall be sealed with a gummed tape or sticker which contains at least the following information:
"(1) Name of suspect;
"(2) Date and time of collection;
"(3) Name or initials of person collecting and/or sealing sample.
"(F) While not in transit to a laboratory or under examination, all urine and blood specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below."

This section sets forth regulations for the collection and handling of blood and urine specimens, but does not provide a time limit within which analysis of a urine sample must be performed.

In *Plummer*, the urine sample was not refrigerated for the one hour and twenty-five-minute period between collection of the sample and mailing of the sample for analysis. There was also no evidence that the sample had been refrigerated during the morning of its arrival at the laboratory prior to its examination at around noon that day. The court found that, although not literal compliance, this was substantial compliance with Ohio Adm.Code 3701–53–05(F) and held in the syllabus as follows:

"Absent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm.Code 3701–53–05 are admissible in a prosecution under R.C. 4511.19."

In sum, appellant's principal argument herein is that the failure to forward the sample in a timely manner operated to his prejudice. Manifestly he would be prejudiced if the delay resulted in an inaccurately higher reading of alcohol content. However, appellant has adduced no testimony that the sample would be so affected. It is not the function of this court to revise an evidentiary ruling of the trial court based upon no more than speculation as to the effect of the delay on the test result. Facially, the state complied with the regulations and we are not disposed to reverse the Section 333.01(a)(4) adjudication as invalid, absent expert evidence in some form as to the effect of the delay.

Even assuming, *arguendo*, that the court erred in admitting the urinalysis results, the record contains sufficient evidence upon which to support appellant's conviction under Section 333.01(a)(1). Both Taylor and Patterson testified that appellant, in their opinion, was under the influence of alcohol. Their opinion was based upon the odor of alcohol about appellant, that he was lethargic in his movement, staggered, had slurred speech, and failed the gaze nystagmus eye test.

While the journal entry finding appellant guilty contained no discussion of the (a)(1) violation, we must assume the court was aware that the ordinance and R.C. 4511.19 charges are separate and independent offenses under the various subsections. *State v. Wilcox* (1983), 10 Ohio App.3d 11, 10 OBR 17, 460 N.E.2d 323; *State v. Ryan* (1984), 17 Ohio App.3d 150, 17 OBR 250, 478 N.E.2d 257. We must further assume that the court intended the Section 333.01(a)(1) conviction to be based upon evidence separate from the (a)(4) conviction. Although these constitute separate offenses, only one sentence may be imposed for convictions under the subsections because these offenses

are allied offenses of similar import under R.C. 2941.32. *State v. Mendieta* (1984), 20 Ohio App.3d 18, 20 OBR 19, 484 N.E.2d 180. Only one sentence was imposed below.

Finally, we address briefly appellant's argument that he is prejudiced by the fact that the state did not introduce any evidence to corroborate Officer Patterson's testimony on the collection and handling of the urine specimen. Appellant does not cite any authority on this proposition and we are aware of none. The quantum of evidence presented is irrelevant. The prosecution must prove beyond a reasonable doubt each of the essential elements of the offense. See, *e.g.*, *State v. Boyd* (1985), 18 Ohio St.3d 30, 18 OBR 68, 479 N.E.2d 850. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus. Inasmuch as the record contains substantial evidence supporting the findings of the trial court, the assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

PETER B. ABELE and HARSHA, JJ., concur.