**The STATE of Ohio, Appellee,**

v.

**O'NEILL, Appellant.**

[Cite as *State v. O'Neill*, 175 Ohio App.3d 402, 2008-Ohio-818.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–06–055.

Decided Feb. 29, 2008.

</div>

404

Raymond Fischer, Wood County Prosecuting Attorney, and Gwen Howe-Gebers, Assistant Prosecuting Attorney, for appellee.

Spiros P. Cocoves, for appellant.

Skow, Judge.

{¶ 1} Appellant, David O'Neill, appeals the judgment of the Wood County Court of Common Pleas. On February 1, 2006, the Wood County Grand Jury issued indictments for aggravated vehicular assault, a violation of R.C. 2903.08(A)(1)(a) and a felony of the third degree; failure to stop after an accident, a violation of R.C. 4549.02(A) and (B) and a felony of the third degree; aggravated vehicular homicide, a violation of R.C. 2903.06(A)(1)(a) and a felony of the second degree; operating a vehicle under the influence of alcohol, a violation of R.C. 4511.19(A)(1)(a) and a misdemeanor of the first degree; and operating a vehicle under the influence of alcohol, a violation of R.C. 4511.19(A)(1)(f) and a misdemeanor of the first degree. Appellant was also subject to administrative license suspension.

{¶ 2} Appellant entered a plea of not guilty to each count and appealed the administrative license suspension. He moved to suppress all evidence of tests of his "sobriety and/or alcohol and/or drug level," asserting that the blood testing was not performed according to the procedures set forth in Ohio Adm.Code 3701-53-01 et seq. He also argued that the affidavit supporting the warrant authorizing the blood draw lacked the required indicia of probable cause.

{¶ 3} At the suppression hearing, State Highway Trooper Nathaniel Towns testified that on January 15, 2006, he was dispatched to State Route 65 and found two bicyclists on the ground. Witnesses told him that a silver Jeep had struck the two bicyclists and had continued north on Route 65. While helping with emergency medical care and ascertaining the dispatch of paramedics to the scene, he heard that the vehicle had been stopped. He also learned from witnesses that the silver Jeep had been driving erratically, had crossed the center line, had

struck other objects on the roadside, and, after striking the cyclists, had not stopped.

{¶ 4} Towns went to St. Luke's Hospital, where the driver of the car, appellant, had been taken after being stopped and taken into custody. Towns requested appellant's consent to a blood draw, and appellant refused. Because a fatality was involved, Towns spoke with a prosecutor and completed a search warrant and affidavit of probable cause. Towns brought his affidavit to the home of Maumee Municipal Court Judge Gary Byers, who reviewed it and questioned Towns regarding the circumstances of the incident and appellant's location. The affidavit stated:

{¶ 5} "I was called to investigate an accident wherein a motorist was driving Northbound on River Road * * *. The driver of the silver Jeep Liberty was driving on River Road and struck two bicyclists * * *. My investigation indicates that the driver continued driving and was followed by another motorist and stopped near the Perrysburg Police Department. Witnesses also indicate that when the driver continued he also struck other objects along River Road.

{¶ 6} "Base[d] upon my investigation I also learned through witnesses that he swerved over to the right side of the roadway when striking one of the bicyclists, killing one and injuring another. The driver, David P. O'Neill, was taken from the scene to St. Luke's Hospital in Maumee, Lucas County, Ohio. Based upon my training and experience, this search warrant is needed in order to obtain a sample of urine and/or blood from David O'Neill to assist law enforcement in determining what charges would be appropriate depending on the results of the tests and if the driver was impaired when driving."

{¶ 7} After Judge Byers approved the search warrant, Towns went directly to St. Luke's Hospital and gave Colleen Strayer, a licensed phlebotomist, the warrant and a blood kit. He remained present during the blood draw. Strayer testified that she used Betadine, a nonalcohol solution, to cleanse the blood-draw site, signed her name on the sample vial, and then gave the sample to Towns. Towns received the sample at 4:49 p.m., and he mailed it at approximately 7:00 p.m. that evening to the Ohio State Highway Patrol crime lab.

{¶ 8} Rebecca Schanbacher, a forensic chemist certified by the Ohio Department of Health, testified that the lab received the blood sample at 8:58 a.m., January 20. She ensured that the sample was refrigerated and sealed, and she performed gas chromatography tests in duplicate. The two tests showed 0.214 and 0.219 percent blood alcohol. Appellant's counsel did not cross-examine Strayer or Schanbacher.

{¶ 9} The trial court held that Towns's affidavit provided probable cause to perform the blood draw. The trial court also held that the state carried its

burden of proving that the blood draw and tests were conducted in substantial compliance with the applicable regulations, but that, in any event, appellant could not demonstrate that the challenged procedures caused him prejudice.

{¶ 10} On May 18, 2006, pursuant to a plea agreement, the charge for operating a vehicle under the influence of alcohol pursuant to R.C. 4511.19(A)(1)(a) was dismissed. Appellant withdrew his not-guilty plea and entered a plea of no contest to each of the remaining charges. The state recommended that any term of incarceration imposed for failure to stop after an accident be imposed concurrently with any other sentence imposed. The court entered convictions for each of the four remaining charges. Prior to sentencing, appellant filed a memorandum requesting minimum, concurrent sentences and arguing that *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, should not apply.

{¶ 11} At sentencing, the trial court imposed four years' incarceration for aggravated vehicular assault, four years' incarceration for failure to stop, eight years' incarceration for aggravated vehicular homicide, and five months' incarceration for driving under the influence. The terms were ordered to run concurrently, with the exception of the eight-year term, which was imposed consecutively to all other terms, for a total of 12 years' incarceration. The court also ordered restitution to two victims in a total amount of $10,733.21. Appellant was notified of postrelease control and ordered to pay the costs of prosecution.

{¶ 12} Appellant timely appealed and now raises three assignments of error for review:

{¶ 13} "The trial court erred to the prejudice of Mr. O'Neill by sentencing him to consecutive, non-minimum sentences in violation of his right to protection from Ex Post Facto sentencing and his right to due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

{¶ 14} "The trial court erred to the prejudice of Mr. O'Neill and should not have imposed a maximum and consecutive sentence of more than minimum time because the record does not support such a sentence.

{¶ 15} "The trial court erred to the prejudice of Mr. O'Neill by denying his motions to suppress the results of the blood sample for the reason that the State failed to demonstrate that it substantially complied with the applicable Ohio regulations."

{¶ 16} We first address appellant's third assignment of error. Initially, we discuss the state's contention that appellant waived the right to appeal the ruling on his motion to suppress when he entered a plea of no contest. Unlike a plea of guilty, a plea of no contest does not preclude a defendant from asserting

on appeal that the trial court erred in ruling on pre-trial motions, including motions to suppress evidence. Crim.R. 12(I). Although the state argues that proof of blood-alcohol content is not required for a violation of R.C. 4511.19(A)(1), that charge was dismissed. Instead, appellant was convicted of violating R.C. 4511.19(A)(1)(f). The section does depend upon proof that the defendant was operating a vehicle with "a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood."

{¶ 17} On appellant's motion to suppress, he argued that his blood sample was not collected or tested in substantial compliance with Ohio Department of Health regulations pursuant to Ohio Adm.Code 3701–53–01 et seq. The state has the burden to prove substantial compliance with the regulations upon a defendant's motion to suppress results of blood-alcohol tests. *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, paragraph one of the syllabus. The trial court, in its opinion, while acknowledging the state's burden of proof on this point, discussed at length appellant's failure to allege specific violations of the code and his failure to cross-examine the phlebotomist and the chemist regarding procedures. It stated: "That this Defendant did not articulate a specific complaint in his motion or at the hearing upon his motion suggests that the Court is being asked to find a violation where none exists. The Court simply refuses to require the State to show that it has substantially complied with every applicable provision with Ohio Adm.Code 3701–53–01 through 3701–53–05. That the Defendant raised specific complaints only after a hearing was held on the matter strongly suggests that he waited to see which provisions the State would not offer testimony on. * * * While the State may have been expected to establish a foundation for the admissibility of the test results, the State was not required to establish substantial compliance with every individual aspect of the code where the Defendant's challenge failed to specify what procedural deviation had occurred. * * * While the burden is on the State to show substantial compliance with the administrative code, a defendant still must establish that he has been prejudiced by the alleged deviation. * * * The Defendant was aware of the requirements of Ohio Adm.Code Chapter 3701–53 but chose not to elicit any testimony thereon from the witnesses."

{¶ 18} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then

independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 19} The trial court focused its holding on its determination that appellant failed to demonstrate prejudice, citing *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, and *State v. Porter* (1992), 76 Ohio App.3d 798, 603 N.E.2d 378. It failed, however, to recognize the shifting burden of proof regarding the admissibility of blood-alcohol test results. "The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress; failure to file such a motion 'waives the requirement on the state to lay a foundation for the admissibility of the test results.' *State v. French* (1995), 72 Ohio St.3d 446, 451, 650 N.E.2d 887. After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health. *Once the state has satisfied this burden and created a presumption of admissibility,* the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. * * * Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation." (Emphasis added.) *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24.

{¶ 20} Ohio Adm.Code 3701–53–05 governs procedures for collecting and handling blood specimens for alcohol-content testing and provides:

{¶ 21} "(B) When collecting a blood sample, an aqueous solution of a nonvolatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.

{¶ 22} "(C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.

{¶ 23} " * * *

{¶ 24} "(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:

{¶ 25} "(1) Name of suspect;

{¶ 26} "(2) Date and time of collection;

{¶ 27} "(3) Name or initials of person collecting the sample; and

{¶ 28} "(4) Name or initials of person sealing the sample.

{¶ 29} "(F) While not in transit or under examination, all blood and urinespecimens [sic] shall be refrigerated."

{¶ 30} The state did establish that a nonalcoholic antiseptic was used to cleanse the blood-draw site, that an accepted testing method was used, and that the sample was in a chain of custody and refrigerated. The state did not, however, demonstrate that the sample vial was sealed with anything more than the phlebotomist's name, as required by section (E), or that a procedure manual was on file as required by Ohio Adm.Code 3701–53–06. Most important, the state did not establish that a solid anticoagulant was used or that the blood was drawn "according to the laboratory protocol as written in the laboratory procedure manual," as required by section (C). The trial court held, "[R]egarding the anticoagulant issue, courts have held that a failure to use any coagulant at all does not render the test results inadmissible."

{¶ 31} The trial court applied the incorrect legal standard. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, has abrogated both *State v. Perry* (1996), 108 Ohio App.3d 709, 671 N.E.2d 623, and *State v. Zuzga* (2001), 141 Ohio App.3d 696, 753 N.E.2d 229, upon which the trial court relied. In *Burnside,* the Ohio Supreme Court squarely held: "The state does not substantially comply with Ohio Adm.Code 3701–53–05 when it fails to use a solid anticoagulant in a blood test." *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at syllabus. If a solid anticoagulant is not used, the state must show that the blood was drawn according to protocol as written in the laboratory's procedural manual. Ohio Adm.Code 3701–53–05(C); *State v. Mayl,* 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 50. Only errors in compliance that are "clearly de minimus" may be excused. *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 34.

{¶ 32} The state argues that the trial court's decision was correct because appellant did not allege these specific violations in his motion to suppress. "[A] motion to suppress evidence must make clear the grounds upon which the motion is based in order that the prosecutor may prepare his case and the court may know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889." *Dayton v. Dabney* (1994), 99 Ohio App.3d 32, 649 N.E.2d 1271. *Dabney* applied *Wallace* to hold that the challenge raised by the defendant's motion to suppress breathalyzer test results was "so narrowly specific as to exclude all other possible challenges," and did not give the prosecution adequate notice. Id. at 37, 649 N.E.2d 1271.

{¶ 33} While Crim.R. 47 requires a defendant to state his grounds for a motion to suppress "with particularity," the state waives this issue if it is not raised in opposition to a defendant's motion to suppress. *State v. Mayl*, 154 Ohio App.3d 717, 2003-Ohio-5097, 798 N.E.2d 1101, ¶ 22. Having reviewed the state's motion in opposition, this issue was clearly waived as the state focused only upon the probable cause supporting the warrant and did not mention a lack of specificity.

{¶ 34} Because the state did not demonstrate substantial compliance in its blood-draw procedures in this instance, the trial court erred as a matter of law in shifting the burden to appellant to demonstrate prejudice. The trial court also erred as a matter of law by directly contradicting *Burnside*. The state was required to establish—without appellant's assistance—substantial compliance. Lack of proof of Ohio Adm.Code 3701–53–05(C) is not substantial compliance. *Burnside*, supra. While lack of compliance with Ohio Adm.Code 3701–53–05(B), 3701–53–05(E), and 3701–53–06, may each separately constitute de minimus errors, the cumulative effect is greater than de minimus. Appellant's motion to suppress the blood-alcohol test results should have been granted, and therefore, his third assignment of error is well taken.

{¶ 35} Because we must reverse the ruling on appellant's motion to suppress, his conviction for violating R.C. 4511.19(A)(1)(f) must be vacated. That section requires proof that appellant had a prohibited blood-alcohol content at the time of the accident. The other charge for operation of a motor vehicle under the influence of alcohol, R.C. 4511.19(A)(1)(a), which does not depend upon evidence of blood-alcohol content, was dismissed. Therefore, the convictions and sentences for aggravated vehicular homicide and aggravated vehicular manslaughter must also be vacated. Appellant was indicted for and pleaded no contest to R.C. 2903.06(A)(1)(a) and 2903.08(A)(1)(a), both of which require proof of a violation of R.C. 4511.19. *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542. The third-degree felony conviction for R.C. 4549.02(A) and (B), failure to stop after an accident, remains unaffected by the ruling on the motion to suppress.

{¶ 36} Appellant's first and second assignments of error challenge the imposition of his sentence. Because the other charges must be dismissed, we review only the four-year term imposed for failure to stop after an accident. First, appellant argues that he should have received minimum, concurrent terms of incarceration because *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates due process, violates the Ex Post Facto Clause, and provides a remedy incompatible with United States Supreme Court precedent. "As an intermediate appellate court, we are bound by the Ohio Supreme Court's decision in *Foster*, and cannot overrule it or declare it unconstitutional. See *State v. Sheets*, 12th Dist. No. CA2006–04–032, 2007-Ohio-1799 [2007 WL 1121306], ¶ 16.

In addition, we note that this court has previously considered the Ex Post Facto and due-process arguments, and has rejected them each time. See *State v. Coleman*, 6th Dist. No. S–06–023, 2007-Ohio-448 [2007 WL 293171]; *State v. Friess*, 6th Dist. No. L–05–1307, 2007-Ohio-2030 [2007 WL 1229313]." *State v. Thrasher*, 6th Dist. No. WD–06–047, 2007-Ohio-2838, 2007 WL 1652572, ¶ 7–8. Appellant's first assignment of error is not well taken.

{¶ 37} In his second assignment of error, appellant argues that the sentence he received is unreasonable and contrary to the purposes of Ohio's sentencing laws, citing R.C. 2929.11. "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). A sentence must be calculated to achieve both purposes and must also be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Sentencing courts have discretion to determine the most effective way to comply with the purpose of sentencing. R.C. 2929.12(A). The court is required to consider factors making the crime more serious, R.C. 2929.12(B), or less serious, R.C. 2929.12(C), than conduct "normally constituting" the offense. The court is also required to consider factors regarding the likelihood of recidivism. R.C. 2929.12(D) and (E). See also *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. A trial court is not required to state any findings on the record in considering these factors. *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793; *State v. Swartz*, 6th Dist. No. L–06–1401, 2007-Ohio-5304, 2007 WL 2874300, ¶ 14.

{¶ 38} "A trial court's discretion to impose a sentence within the statutory guidelines is very broad and an appellate court cannot hold that a trial court abused its discretion by imposing a severe sentence on a defendant where that sentence is within the limits authorized by the applicable statute. *State v. Harmon*, 6th Dist. No. L–05–1078, 2006-Ohio-4642 [2006 WL 2578760], ¶ 16, citing *Harris v. U.S.* (2002), 536 U.S. 545, 565 [122 S.Ct. 2406, 153 L.Ed.2d 524]. An appellate court may not set aside the sentence if there is no clear showing that the trial court abused its discretion. Id. An abuse of discretion connotes more than an error in judgment or law; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [450 N.E.2d 1140]." *State v. Friess*, 6th Dist. No. L–05–1307, 2007-Ohio-2030, 2007 WL 1229313, ¶ 6.

{¶ 39} In its judgment entry of sentencing, the trial court stated that it carefully reviewed the principles and purposes of sentencing, as well as seriousness and recidivism factors. It also reviewed the record, information presented at the hearing, and the presentence investigation report. Appellant points to the trial court's statements at sentencing regarding his consumption of alcohol, his age, and his lack of remorse. At the sentencing hearing, the trial court noted that after appellant had hit the bicyclists, he had stopped briefly and then continued driving. It justifiably found the offense more serious because of the serious harm caused by his acts. When it considered appellant's age, it was in the context of his lack of relative maturity in driving while impaired.

{¶ 40} With respect to the conviction for failure to stop, it is elevated to a third-degree felony because the death of a person resulted. A third-degree felony carries a maximum penalty of five years' incarceration. R.C. 2929.14(A)(3). The sentence of four years' incarceration is not contrary to law when the facts are considered in light of the sentencing guidelines. The term imposed is within the permissible range for the offense, and considering the serious nature of the offense and the resulting harm, it is not unreasonable. Because the trial court did not abuse its discretion in sentencing appellant, his second assignment of error is not well taken.

{¶ 41} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed with respect to the ruling on appellant's motion to suppress. Accordingly, the conviction for operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(f) must be vacated. Because appellant was indicted for and pleaded no contest to the sections of R.C. 2903.06 and 2903.08 that depend upon a violation of R.C. 4511.19, the convictions for aggravated vehicular homicide and aggravated vehicular assault must also be vacated. The conviction for failure to stop after an accident and the sentence of four years' incarceration is affirmed. The order of monetary restitution to the victims of appellant's failure to stop and the other orders of the court are likewise unaffected. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed in part
and reversed in part.

HANDWORK and PIETRYKOWSKI, JJ., concur.