[Cite as *State v. Falconer*, 2012-Ohio-2293.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STAE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| JOHN D. FALCONER | : | Case No. 2011CA00233 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Massillon Municipal
                                                            Court, Case No. 2011TRC1601

JUDGMENT:                                        Affirmed/Reversed in Part and
                                                            Remanded

DATE OF JUDGMENT:                       May 21, 2012

APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

ROBERT A. ZEDELL                             MICHAEL BOSKE
Massillon Law Department                     122 Central Plaza North
Two James Duncan Plaza                      Canton, OH  44702
Massillon, OH  44646

*Farmer, J.*

{¶1} On March 12, 2011, Ohio State Highway Patrol Trooper Johnnie Maier stopped appellant, John Falconer, for weaving in his marked lane. After conducting field sobriety tests and collecting a blood sample, Trooper Maier charged appellant with driving under the influence in violation of R.C. 4511.19 and driving in marked lanes in violation of R.C. 4511.33.

{¶2} On May 16, 2011, appellant filed a motion to suppress, challenging the HGN field sobriety test and the blood test sample. A hearing was held on August 1, 2011. By judgment entry filed September 12, 2011, the trial court denied the motion, finding Trooper Maier had probable cause to stop appellant, the HGN field sobriety test was conducted in substantial compliance, and the blood test sample was collected and handled according to the Department of Health regulations.

{¶3} On September 28, 2011, appellant pled no contest. By journal entry filed same date, the trial court found appellant guilty and sentenced him to a three day driver intervention program in lieu of three days in jail, imposed fines and costs, and suspended his driver's license for six months.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT ERRED IN NOT SUPPRESSING THE RESULTS OF APPELLANT'S BLOOD TEST WHEN THE STATE FAILED TO PROVIDE EVIDENCE THAT IT SUBSTANTIALLY COMPLIED WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS REGULATING THE STORAGE AND TESTING OF

BLOOD SAMPLES ACCORDING TO *OHIO ADMINISTRATIVE CODE (OAC) 3701-53-01 ET SEQ.*"

II

{¶6} "THE TRIAL COURT ERRED IN NOT SUPPRESSING THE RESULTS OF THE HGN TEST, WHEN APPELLANT CLEARLY SUFFERED FROM A MEDICAL CONDITION THAT AFFECTED THE RESULTS OF THE FIELD SOBRIETY TEST."

I

{¶7} Appellant claims the trial court erred in denying his motion to suppress in relation to the blood test sample. We agree.

{¶8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 485; *State v. Guysinger* (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.

*State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623; *Guysinger*. As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 116 S.Ct. 1657, 1663, "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶9}   Specifically, appellant argues the trial court erred in limiting the scope of the motion to only Trooper Maier's actions relative to the blood test sample. At the commencement of the hearing, the following discussion was held on the scope of the motion:

{¶10}   "DEFENSE: Well as far as the blood testing we have alleged that the person drawing the blood is not qualified pursuant to 4511.19D1B um and we lay that out and I think that challenges sufficient to transfer the burden. We've also alleged that um …

{¶11}   "COURT: Okay so there was no … you've alleged that there was not a qualified person to take the test.

{¶12}   "DEFENSE: We've certainly haven't been provided any discovery that will clarify that issue so um …

{¶13}   "COURT: Okay, all right.

{¶14}   "DEFENSE: … we are alleging that, we're also alleging that the testing wasn't performed in compliance with the Ohio Administrative Code 3701-53-05 um and that's laid out in the second paragraph which is rather lengthy.

{¶15}   "COURT: Yeah I read that, I read that in your motion. I read your motion so um is the State prepared to proceed on these issues that I have outlined and Mr. Boske has gathered some information about that.

{¶16} "STATE: If the challenge to the blood is from 3701-53-05 regarding the collection and um handling of that specimen at the time of testing then yeah we are prepared to go forward.

{¶17} "COURT: All right and um the defense is prepared to go forward is that right?

{¶18} "DEFENSE: Yes sir.

{¶19} "COURT: Okay would you like to make an opening statement Mr. Boske?

{¶20} "DEFENSE: Your honor we would just ask that our motion be granted based upon um the allegations put in that motion regarding probable cause to make the arrest. As far as inadmissible statements there was nothing in the report that indicated that my client had made any statements whatsoever but obviously if through testimony turns out to be not accurate then we would ask the Court to suppress any statements made after the arrest and after um based upon that provision. Also we're asking that the HGN test be stricken as laid out with some specificity in paragraph C and again that the alcohol testing wasn't done properly, wasn't transported properly, wasn't tested properly as laid out in my motion. But we are prepared to go forward." T. at 4-5.

{¶21} At the conclusion of the hearing, the trial court found the following:

{¶22} "COURT: Okay based on the evidence that I've heard I think that there was, of course a reasonable articulable suspicion for the stop although I don't think that was one of the issues in the Motion to Suppress um my finding is that there was probable cause to arrest for OVI for um including the red glossy eyes, the speech, the HGN which appears to have been done correctly um the walk and turn of course was not an issue but the walk and turn, and the one leg stand as well as the admission of

drinking. So the findings, there was probable cause. The other issue went to statements that were made by the defendant. I heard no testimony that any statements were made. I think that issue then is moot um as to the blood test I went over all the um criteria as well as it was brought out um my finding is that the blood test was reflective of the alcohol in the defendant's system and that the Motion to Suppress will be overruled on that issue. I would ask the State to prepare an entry based on my findings. We will give you then um the issue is a trial date. Any disease that was brought up was never brought up to this Court so I don't have any idea what it is, if there is any or if an allegation (inaudible) substantiate allegation um if anything of that nature provided on discovery back to the State, on any illness that could effect his blood of the HGN or…" T. at 44-45.

{¶23} Appellant argues the trial court's ruling was incorrect because testimony was not presented concerning the blood test sample and its refrigeration after placing the sample in a U.S. postal mailbox approximately two and one half hours after the stop.

{¶24} Crim.R. 47 provides that a motion to suppress "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." The state waives this issue if not raised by objection. *State v. Mayl,* 154 Ohio App.3d 717, 2003-Ohio-5097, ¶22.

{¶25} " 'The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress; failure to file such a motion "waives the requirement on the state to lay a foundation for the admissibility of the test results." *State v. French* (1995), 72 Ohio St.3d 446, 451, 650 N.E.2d 887. After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test

was administered in substantial compliance with the regulations prescribed by the Director of Health. *Once the state has satisfied this burden and created a presumption of admissibility*, the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. * * * Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation.' (Emphasis added.) *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24." *State v. O'Neill,* 175 Ohio App.3d 402, 2008-Ohio-818, ¶19.

{¶26} In order to determine if the trial court erred in not expanding the scope of the motion to go beyond the testimony of Trooper Maier's involvement with the blood test sample, we must look to the language of the motion. The May 16, 2011 motion to suppress argued the following:

{¶27} "Finally, the Defendant argues that the State must prove that the blood test obtained from the Defendant was collected, handled, and tested in accordance with regulations set forth by the Ohio Department of Health. While the ODH regulates the requirements for OVI prosecutions of 'per se' violations, R.C. 4511.19(D)(1)(b) provides that only a 'physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw a blood sample' for the purpose of determining the alcohol or drug content for 'under the influence' cases. The burden rests with the State to prove the proper foundation of substantial compliance to use any blood alcohol content in an 'under the influence' prosecution of the Defendant.

{¶28} "*Ohio Administrative Code (OAC) 3701-53-05* establishes the requirements for collecting and handling blood samples. First, the person collecting the

sample must use a non-volatile antiseptic on the area where blood is to be drawn. *OAC 3701-53-05(B).* The blood must be drawn with a sterile dry needle into a vacuum container that contains a solid anticoagulant. *OAC 3701-53-05(C)*; *State v. Maudlin,* 1998 Ohio App. LEXIS 297 (Ohio Ct. App., Clark County July 24, 1989). In *State v. Burnside*, 100 Ohio St. 3d 152 (Ohio 2003), the Supreme Court of Ohio held that the State must prove that a solid anticoagulant was used. If the State is unable to prove this required element, it is not in substantial compliance with *OAC 3701-53-05(C).* The State must also provide evidence that the container of blood was 'sealed in a manner such that tampering can be detected and have a label which contains at least the following information: (1) name of suspect; (2) date and time of collection; (3) name or initials of person collecting the sample; and (4) name or initials of person sealing the sample.' *OAC 3701-53-5(E).* Also, the blood sample must be refrigerated when it is either not in transit or under examination. *OAC 3701-53-5(F).* The State must also lay the foundation for chain of custody of the sample, to ensure it has not been substituted or tampered with. Further, *OAC 3701-53-06* through *3701-53-09* established the requirements for the laboratory and personnel testing the blood sample. Again, the burden is on the State to provide evidence of substantial compliance with these regulations concerning the testing of the blood sample."

{¶29} We find this motion was very specific and the scope of the hearing should have included the procedures for the testing and preservation of the blood test sample. We conclude the trial court erred in limiting its review.

{¶30} Assignment of Error I is granted.

II

{¶31} Appellant claims the trial court erred in denying his motion to suppress in relation to the results of the HGN field sobriety test. We disagree.

{¶32} Specifically, appellant argues the HGN test should have been suppressed because he suffers from a medical condition that affected the results.

{¶33} Trooper Maier testified appellant told him that he suffered from a medical condition that could affect his eyes, but he nevertheless conducted the HGN test in compliance with the NHTSA manual. T. at 13. Trooper Maier testified to the following:

{¶34} "During the lack of smooth pursuit test I did not notice either of those clues in Mr. Falconer's eye, eyes rather, but not because it wasn't there it may have been there it may not have been there but because um Mr. Falconer was unable or did not follow my instructions and did not follow the stimulus as I requested." T. at 14. Trooper Maier stated he found four clues out of six and appellant "could not complete the test correctly." T. at 15-16.

{¶35} On cross-examination, Trooper Maier admitted that appellant's medical condition called "palsy" was familiar and recalled seeing that appellant's face on one side "was kind of drooping." T. at 29. Appellant did not present any evidence on his medical condition and the possible affect on the HGN test.

{¶36} Upon review, we find the trial court did not err in denying the motion to suppress the results of the HGN test.

{¶37} Assignment of Error II is denied.

{¶38} The judgment of the Massillon Municipal Court of Stark County, Ohio is hereby affirmed in part and reversed in part and the matter is remanded to said court for

a hearing on the procedures, testing, and preservation of the blood test sample after Trooper Maier placed it in the mailbox.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

_s/ Sheila G. Farmer_____

_s/ W. Scott Gwin_____

_s/ John W. Wise_____

JUDGES

SGF/sg 503

[Cite as *State v. Falconer*, 2012-Ohio-2293.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STAE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN D. FALCONER | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011CA00233 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Massillon Municipal Court of Stark County, Ohio is affirmed in part and reversed in part and the matter is remanded to said court for a hearing on the procedures, testing, and preservation of the blood test sample after Trooper Maier placed it in the mailbox. Costs to appellee.

_s/ Sheila G. Farmer_____

_s/ W. Scott Gwin_____

_s/ John W. Wise_____

JUDGES