[Cite as *State v. Schlupp*, 2012-Ohio-6072.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Patricia A. Delaney, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2012 CA 0007 |
|  | : |  |
|  | : |  |
| ROBERT S. SCHLUPP | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING: Criminal Appeal from the Municipal
Court of Coshocton County, Ohio No.
1200142 A-D

JUDGMENT: Affirmed In Part, Reversed and
Remanded In Part

DATE OF JUDGMENT ENTRY: December 18, 2012

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

ROBERT A. SKELTON                    MARK A. PERLAKY
Law Director                                   111 W. Main Street
760 Chestnut Street                       Newcomerstown, Ohio  43832
Coshocton, Ohio  43812

*Edwards, J.*

{¶1} Appellant, Robert S. Schlupp, appeals a judgment of the Coshocton Municipal Court convicting him of operating a motor vehicle with a prohibited blood alcohol content (R.C. 4511.19(A)(1)(f)),driving under an OVI suspension (R.C. 2410.14(A)) and failure to control (R.C. 4511.202) upon a plea of no contest. Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2} On January 21, 2012, Deputy Albert Havranek responded to an accident on County Road 16 in Coshocton County. A pickup truck was on its side, and appellant was being loaded into an ambulance for transport to Coshocton Memorial Hospital. Emergency personnel told the deputy that there was a strong odor of alcohol coming from appellant.

{¶3} Havranek proceeded to the hospital and asked to speak to appellant about the accident. He could smell alcohol on appellant. The deputy asked appellant what happened. Appellant responded that he was driving to pick up his wife from work and went off the side of the road. During the conversation appellant admitted to drinking eight or nine beers. The officer did not know what time period the beer was consumed in and so he did not have any reason to place appellant under arrest. Appellant agreed to submit to a blood test.

{¶4} The blood test showed a blood alcohol content of .245 percent. On January 24, 2012, appellant came to the sheriff's office and was served with a citation for driving while intoxicated, driving with a prohibited blood alcohol content, driving under an OVI suspension and failure to control.

{¶5} On February 24, 2012, appellant filed a motion for independent testing of the blood sample. On March 6, 2012, the State notified appellant that the sample had been destroyed pursuant to hospital policy of destroying blood samples seven days after they are taken.

{¶6} Appellant filed a motion to suppress the blood test results and any statements made during appellant's questioning at the hospital. Appellant alleged in his motion that the sample was not taken in compliance with Department of Health regulations and that the sample was not retained for one year for independent testing as required by OAC 3701-53-06(A). He argued that the statement should be suppressed because he was not Mirandized prior to speaking to Deputy Havranek.

{¶7} The court overruled the motion to suppress after holding an evidentiary hearing. Appellant then pleaded no contest to driving with a prohibited blood alcohol content, driving under an OVI suspension and failure to control and was convicted.

{¶8} He assigns two errors on appeal:

{¶9} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE BLOOD SAMPLE OBTAINED FROM HIM, AS SAID SAMPLE WAS NEITHER TAKEN FROM HIM NOR PRESERVED IN SUBSTANTIAL COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE.

{¶10} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS STATEMENTS TAKEN FROM HIM IN THE COSHOCTON MEMORIAL HOSPITAL EMERGENCY ROOM, AS SAID STATEMENTS WERE GIVEN IN VIOLATION OF APPELLANT'S FIFTH AMENDMENT RIGHTS."

I

{¶11} In his first assignment of error, appellant argues that the court erred in overruling his motion to suppress because the State failed to demonstrate that the blood sample was drawn and tested in compliance with Ohio Administrative Code sections 3701-53-05 through 3701-53-07. He also argues that the test results should have been suppressed because the sample was not retained for one year as required by OAC 3701-53-06(A).

{¶12} This Court has recently addressed what the burden on the State is when a defendant challenges the admission of test results on the basis of noncompliance with Department of Health Regulations:

{¶13} "Crim.R. 47 provides that a motion to suppress 'shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought.'" The state waives this issue if not raised by objection. *State v. Mayl,* 154 Ohio App.3d 717, 798 N.E.2d 1101, 2003–Ohio–5097, ¶ 22.

{¶14} "'The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress; failure to file such a motion "waives the requirement on the state to lay a foundation for the admissibility of the test results." *State v. French* (1995), 72 Ohio St.3d 446, 451, 650 N.E.2d 887. After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health. *Once the state has satisfied this burden and created a presumption of admissibility,* the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. * * *

Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation.' (Emphasis added.) *Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 24." *State v. O'Neill,* 175 Ohio App.3d 402, 887 N.E.2d 394, 2008–Ohio–818, ¶ 19." *State v. Falconer*, 5th Dist. No. 2011CA00233, 2012-Ohio-2293, ¶24-25.

**{¶15}** In the instant case, the State did not object to the general nature of the motion to suppress regarding noncompliance with DOH regulations and has therefore waived this issue. However, while appellant now argues the State failed to prove substantial compliance with OAC 3701-53-05 through OAC 3701-53-07, in his motion appellant alleged only a failure to prove substantial compliance with OAC 3701-53-06 and 07. We therefore limit our review to whether the State failed to demonstrate substantial compliance with OAC 3701-53-06 and 07. OAC 3702-53-06 provides:

**{¶16}** "(A) Chain of custody and the test results for evidential alcohol and drugs of abuse shall be identified and retained for not less than three years, after which time the documents may be discarded unless otherwise directed in writing from a court. All positive blood, urine and other bodily substances shall be retained in accordance with rule 3701-53-05 of the Administrative Code for a period of not less than one year, after which time the specimens may be discarded unless otherwise directed in writing from a court.

**{¶17}** "(B) The laboratory shall successfully complete a national proficiency testing program using the applicable technique or method for which the laboratory personnel seek a permit under rule 3701-53-09 of the Administrative Code.

**{¶18}** "(C) The laboratory shall have a written procedure manual of all analytical techniques or methods used for testing of alcohol or drugs of abuse in bodily substances. Textbooks and package inserts or operator manuals from the manufacturer may be used to supplement, but may not be used in lieu of the laboratory's own procedure manual for testing specimens.

**{¶19}** "(D) The designated laboratory director shall review, sign, and date the procedure manual as certifying that the manual is in compliance with this rule. The designated laboratory director shall ensure that:

**{¶20}** "(1) Any changes in a procedure be approved, signed, and dated by the designated laboratory director;

**{¶21}** "(2) The date the procedure was first used and the date the procedure was revised or discontinued is recorded;

**{¶22}** "(3) A procedure shall be retained for not less than three years after the procedure was revised or discontinued, or in accordance with a written order issued by any court to the laboratory to save a specimen that was analyzed under that procedure;

**{¶23}** "(4) Laboratory personnel are adequately trained and experienced to perform testing of blood, urine and other bodily substances for alcohol and drugs of abuse and shall ensure, maintain and document the competency of laboratory personnel. The designated laboratory director shall also monitor the work performance and verify the skills of laboratory personnel;

**{¶24}** "(5) The procedure manual includes the criteria the laboratory shall use in developing standards, controls, and calibrations for the technique or method involved; and

**{¶25}** "(6) A complete and timely procedure manual is available and followed by laboratory personnel.

**{¶26}** "(E) Any time the designated laboratory director is replaced, another permitted laboratory director or applicant shall be designated and approved by the director."

**{¶27}** OAC 3701-53-07 provides in pertinent part relating to the testing of blood:

**{¶28}** "(A) Blood, urine, and other bodily substance tests for alcohol shall be performed in a laboratory by an individual who has a laboratory director's permit or, under his or her general direction, by an individual who has a laboratory technician's permit. General direction does not mean that the laboratory director must be physically present during the performance of the test. Laboratory personnel shall not perform a technique or method of analysis that is not listed on the laboratory director's permit.

**{¶29}** "(1) An individual who is employed by a laboratory, which has successfully completed a proficiency examination administered by a national program for proficiency testing for the approved technique or method of analysis for which the permit is sought and who possesses at least two academic years of college chemistry and at least two years of experience in a clinical or chemical laboratory and possesses a minimum of a bachelor's degree shall meet the qualifications for a laboratory director's permit.

**{¶30}** "(2) An individual who is employed by a laboratory, which has successfully completed a proficiency examination administered by a national program for proficiency testing for the approved technique or method of analysis for which the permit is sought, has been certified by the designated laboratory director that he or she is competent to perform all procedures contained in the laboratory's procedure manual for testing

specimens and meets one of the following requirements shall meet the qualifications for a laboratory technician's permit:

**{¶31}** "(a) Has a bachelor's degree in laboratory sciences from an accredited institution and has six months experience in laboratory testing;

**{¶32}** "(b) Has an associate's degree in laboratory sciences from an accredited institution or has completed sixty semester hours of academic credit including six semester hours of chemistry and one year experience in laboratory testing;

**{¶33}** "(c) Is a high school graduate or equivalent and has successfully completed an official military laboratory procedures course of at least fifty weeks duration and has held the military enlisted occupational specialty of medical laboratory specialist (laboratory technician); or

**{¶34}** "(d) Is a high school graduate or equivalent and was permitted on or before July 7, 1997.

**{¶35}** "(B) Blood, urine and other bodily substances tests for drugs of abuse shall be performed in a laboratory by an individual who has a laboratory director's permit or, under his or her general direction, by an individual who has a laboratory technician's permit. General direction does not mean that the laboratory director must be physically present during the performance of the test. Laboratory personnel shall not perform a technique or method of analysis that is not listed on the laboratory director's permit.

**{¶36}** "(1) An individual who is employed by a laboratory, which has successfully completed a proficiency examination administered by a national program for proficiency testing for the approved technique or method of analysis for which the permit is sought,

who possesses at least two academic years of college chemistry and meets one of the following requirements shall meet the qualifications for a laboratory director's permit:

**{¶37}** "(a) Has at least five years of experience in a clinical or chemical laboratory and possesses a minimum of a bachelor's degree in laboratory sciences;

**{¶38}** "(b) Has at least three years of experience in a clinical or chemical laboratory and possesses a minimum of a master's degree; or

**{¶39}** "(c) Has at least two years of experience in a clinical or chemical laboratory and possesses a minimum of an earned doctoral degree.

**{¶40}** "(2) An individual who is employed by a laboratory, which has successfully completed a proficiency examination administered by a national program for proficiency testing for the approved technique or method of analysis for which the permit is sought, has been certified by the designated laboratory director that he or she is competent to perform all procedures contained in the laboratory's procedure manual for testing specimens and meets one of the following requirements shall meet the qualifications for a laboratory technician's permit:

**{¶41}** "(a) Has a bachelor's degree in laboratory sciences from an accredited institution and has one year experience in laboratory testing;

**{¶42}** "(b) Has an associate's degree in laboratory sciences from an accredited institution or has completed sixty semester hours of academic credit including six semester hours of chemistry and two years experience in laboratory testing;

**{¶43}** "(c) Is a high school graduate or equivalent and has successfully completed an official military laboratory procedures course of at least fifty weeks

duration and has held the military enlisted occupational specialty of medical laboratory specialist (laboratory technician) and two years experience in laboratory testing; or

**{¶44}** "(d) Is a high school graduate or equivalent and was permitted on or before July 7, 1997."

**{¶45}** Stacy Kraft testified as follows regarding the procedures followed for testing appellant's blood sample:

**{¶46}** "Q. Can you state your name, please, ma'am?

**{¶47}** "A. Stacy Kraft.

**{¶48}** "Q. How are you employed?

**{¶49}** "A. I'm a medical technologist at Coshocton County Memorial Hospital.

**{¶50}** "Q. And for those of us who don't know, what does that mean?

**{¶51}** "A. We test body fluids.

**{¶52}** "Q. Okay.  Did you have the opportunity to test the body fluid of Robert S. Schlupp that was drawn by Joan Shriver on January 21st?

**{¶53}** "A. Yes.

**{¶54}** "Q. And what body fluid would that be?

**{¶55}** "A. Blood.

**{¶56}** "Q. Okay.  And what did you test it for?

**{¶57}** "A. I tested it - - I think he had a comprehensive possibly.

**{¶58}** "Q. What does that mean?

**{¶59}** "A. It's the chemistry section of the blood, tests for BUN, creatine, glucose and I think they also added an alcohol.

**{¶60}** "Q. You tested for a number of things?

**{¶61}** "A. Yes.

**{¶62}** "Q. Not just for alcohol consumption?

**{¶63}** "A. Yes.

**{¶64}** "Q. But alcohol consumption is one of the things; right?

**{¶65}** "A. That was one of the things ordered.

**{¶66}** "Q. Okay.  Did you perform your procedures in compliance with the Ohio Administrative Code?

**{¶67}** "A. Yes."  Transcript at 33-34.

**{¶68}** Other than Kraft's conclusory statement that the procedures were performed in compliance with the Ohio Administrative Code, there was no evidence of substantial compliance with OAC 3701-53-06 and 07.  Kraft did not testify as to her qualifications to perform the test, nor did she testify as to the procedures employed by the lab.  Nothing in Kraft's testimony demonstrates with any specificity that the requirements set forth in the Ohio Administrative Code were met by the lab.  We find that the State failed to meet its burden of establishing substantial compliance with the regulations.

**{¶69}** Because we have found that the State failed to meet its burden of demonstrating substantial compliance with OAC 3701-53-06 and 07, we need not reach the issue of whether the court erred in failing to suppress the blood test on the basis that the sample was not retained for one year.

**{¶70}** The first assignment of error is sustained.

II

{¶71} In his second assignment of error, appellant argues that the court erred in failing to suppress statement he made at the hospital. He argues that he was in custody and therefore the officer was required to read him his Miranda warnings before questioning him because he was strapped to a backboard at the time the officer questioned him in the emergency room and therefore was not free to leave.

{¶72} Under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, statements stemming from custodial interrogations are admissible only after a showing that the procedural safeguards have been followed. "Custody" is when a defendant is taken into custody "or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda* at 478. As the case law developed, trial courts were to determine whether a reasonable person under the circumstances would think he/she was under arrest. *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. The custody must be under the control of the state. *State v. Giallombardo* (1986), 29 Ohio App.3d 279, 504 N.E.2d 1202. As noted in *Mathis V. United States* (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381, it is the fact of custody, not its purpose that controls. As Justice White wrote in *Minnesota v. Murphy* (1984), 465 U.S. 420, 433, 104 S.Ct. 1136, 79 L.Ed.2d 409, "[c]ustodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officer's will and to confess."

{¶73} In the instant case, while appellant was strapped to a backboard for medical purposes and therefore was not free to walk out of the room, the conditions were not under the control of the officer. Deputy Havranek told appellant he was there

to speak to him about the accident, but did not place him under arrest. Tr. 8. He did not know how intoxicated appellant was because he could not do field sobriety tests. After appellant admitted to drinking eight or nine beers, the deputy still did not place appellant under arrest because he did not know the time period in which the beers were consumed. Tr. 9. The deputy did not handcuff appellant, pat him down or do anything other than talk to him. Tr. 11. The deputy recognized that appellant was not able to walk away from the encounter because he was strapped to a backboard; however, the deputy testified that appellant could have told him to leave at any point. Tr. 22.

{¶74} Based on the facts and circumstances of this case, the trial court did not err in overruling the motion to suppress statements made in the hospital. The officer did not arrest appellant until after he obtained blood test results. While appellant's freedom of movement was restrained, the restraint was for medical reasons and not under the control of the officer. The evidence reflects that the deputy did not intend to arrest appellant, even after he admitted to consuming eight or nine beers, until after he had the results of appellant's blood test. The officer was trying to obtain information about the accident. Appellant was not in custody at the time the officer questioned him about the accident at the hospital.

{¶75} The second assignment of error is overruled.

{¶76} The judgment of the Coshocton Municipal Court overruling appellant's motion to suppress the results of the blood test is reversed. The judgment overruling appellant's motion to suppress statements is affirmed. This cause is remanded to that court for further proceedings according to law. Costs to be divided equally between the parties.

By: Edwards, J.

Delaney, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/rad1003

[Cite as *State v. Schlupp*, 2012-Ohio-6072.]

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee      :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
ROBERT SCHLUPP                         :
                                       :
        Defendant-Appellant     :          CASE NO. 2012 CA 0007


        For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Municipal Court of Coshocton County, Ohio is reversed as to the failure to suppress the blood test result.  The judgment is affirmed as to the failure to suppress statements made at the hospital.  This case is remanded for further proceedings according to law.  Costs to be divided equally between the parties.


                                          _____


                                          _____


                                          _____

                                                       JUDGES