[Cite as *State v. James*, 2022-Ohio-592.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 21CA0043 |
| | : | |
| JUSTIN W. JAMES | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of
Common Pleas, Case No.
2020CR00266

JUDGMENT:                     AFFIRMED

DATE OF JUDGMENT ENTRY:       February 28, 2022

APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

WILLIAM C. HAYES                       CHARLES A. KOENIG
LICKING CO. PROSECUTOR                 JAMES D. OWEN
DARREN M. BURGESS                      5354 North High St.
20 S. Second St., Fourth Floor         Columbus, OH 43214
Newark, OH 43055

*Delaney, J.*

{¶1}   Appellant Justin W. James appeals from the May 10, 2021 Judgment Entry of the Licking County Court of Common Pleas, incorporating the court's February 5, 2021 Judgment Entry overruling his motion to suppress.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

*Facts underlying appellant's indictment*

{¶2}  The following facts are adduced from appellee's bill of particulars filed July 17, 2020.

{¶3} Appellant was the live-in roommate of two parents, Mother and Father. Mother and Father have ten-year-old twin daughters, Jane and Mary Doe, who also live in the residence. On June 2, 2020, Mother reported to the Newark Police Department that appellant sexually assaulted Jane and Mary Doe.  The girls disclosed the abuse and Mother called 911.

{¶4}  Newark Police contacted appellant at the residence. Appellant was in his bedroom just off the living room. Police observed appellant "had caused physical harm to himself using various sharp objects." Appellant was transported to Licking Memorial Hospital and then to The Ohio State University Wexner Medical Center for treatment.

{¶5} Jane and Mary Doe were interviewed by a social worker at Children's Services.  One child disclosed appellant came into her bedroom in the middle of the night, removed her from her bed, took her into his bedroom, and rubbed her vagina over her clothing.

{¶6}   Newark detectives interviewed appellant at The Ohio State University Wexner Medical Center.  Appellant admitted that early that morning, he went upstairs,

took the child out of her bedroom, and brought her into his bedroom.  He said while in his bedroom, he rubbed her vagina with his left hand over her clothing for around two minutes. Appellant also admitted he rubbed her vagina under her underwear for around five seconds.

{¶7}  Appellant also admitted to detectives that the previous night (June 1, 2020), he rubbed the other child's vagina over her pants for two minutes while they were seated on the couch in the living room.

{¶8} Appellant was charged by indictment with two counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4), both felonies of the third degree. Appellant entered pleas of not guilty.

{¶9}  On August 14, 2020, appellant filed a motion to suppress his statements to law enforcement. Appellee filed a memorandum in opposition on September 4, 2020. The motion to suppress proceeded to evidentiary hearing on November 30, 2020.

*Evidence adduced at hearing upon appellant's motion to suppress*

{¶10}  The following evidence is adduced from the hearing on November 30, 2020. Appellee called one witness, Detective Ryan Fumi of the Newark Police Department. Appellant testified as the sole defense witness.

{¶11} On June 2, 2020, Fumi was dispatched to a residential address regarding a report of a sexual assault. Upon arrival, appellant was present and was identified as the suspect, but he was being treated by a squad for self-inflicted injuries and was transported to Licking Memorial Hospital.

{¶12} After appellant was transported from the scene, Fumi stayed at the residence to interview the parents; he then went to Children's Services to speak to the

victims; and finally, he went to the OSU Wexner Medical Center to speak to appellant. Appellant had been transported to OSU from Licking Memorial due to the extent of his injuries.

{¶13} Fumi was accompanied by Detective Angles, also of the Newark Police Department. Fumi and Angles wore plain clothes and had badges around their necks and firearms visible on their hips.

{¶14} Upon entering appellant's hospital room, Fumi introduced himself and Angles, and asked if he could stay in appellant's room for a few minutes to speak to him. Appellant responded, "Fair enough." Appellant was in bed, eating. Fumi testified appellant was bandaged and his injuries were not visible; appellant was coherent and did not appear to be under the influence.

{¶15} Fumi's conversation with appellant was recorded and the audio tape was played at the hearing as appellee's Exhibit 1.

{¶16} Fumi told appellant he didn't have to speak to him, but appellant responded that he didn't mind. Fumi asked permission to shut the door of appellant's room for privacy and to prevent interruption. Appellant was not handcuffed or restrained. A nurse advised Fumi that appellant was not "pink slipped," referring to a process in which a patient may be held involuntarily if they are deemed to be a danger to themselves or others. Appellant's room was not under guard and no security personnel were present.

{¶17} Fumi testified that appellant was untruthful at first, but then truthful. Appellant confessed to the sexual assaults. Fumi asked whether appellant's finger entered the victim's vagina and appellant insisted penetration did not occur.

{¶18} Appellant was not under arrest during the interview, as Fumi told him several times. Appellant said he was worried about going to jail, and Fumi responded that he wasn't there to arrest appellant.

{¶19} After the confession, Angles remained with appellant in the room while Fumi spoke to a nurse, asking her to alert Newark police upon appellant's release. The nurse advised the hospital did not have staff available to supervise appellant and would not be able to detain him.

{¶20} Fumi testified he did not provide appellant with Miranda warnings because appellant was not in custody. Throughout Fumi's time with appellant at the hospital, appellant was not under arrest.

{¶21} At the conclusion of the interview, Fumi told appellant they were leaving and appellant asked if he was going to jail. Fumi replied, "At some point, probably."

{¶22} Appellant was released from the hospital several hours later. Detective Angles arrested appellant upon his release.

{¶23} Upon cross-examination, defense counsel asked Fumi if he was aware of a notation in appellant's medical records indicating a conversation with hospital security. Specifically, the notation stated, "Hold patient per ED guidelines with risk of elopement and/or self-harm or pink slip." Fumi stated he was unaware of this note in appellant's medical records and didn't know what it meant.

{¶24} Fumi concurred that appellant did not have his clothes or his cell phone with him in the hospital room during the interview, but disagreed with counsel's inference that appellant was not free to leave.

{¶25} Appellant testified on his own behalf and said the period during which he was transported to Licking Memorial then OSU was "fuzzy." He testified that during transport to OSU, "they" told him either police or security would contact him, but he didn't know why. He testified security and doctors met him upon arrival at the OSU trauma unit, and security asked him if he wanted to receive phone calls or talk to anyone; he said he didn't want to talk to anyone.

{¶26} Appellant testified he was taken to a second hospital room where he eventually spoke to Fumi. He was not aware of the notation in his medical records about "holding" him. During the interview, appellant testified he was "leery" because the detectives wore guns and he didn't believe he was free to leave. Fumi told him several times he was not presently under arrest but that he probably would eventually be arrested.

{¶27} The trial court took the evidence and arguments of the parties under advisement. On February 5, 2021, the trial court filed a written Judgment Entry overruling appellant's motion to suppress.

*No-contest pleas and sentencing*

{¶28} On or around May 10, 2021, appellant waived his right to trial by jury and changed his previously-entered pleas of not guilty to ones of no contest. Having reviewed a pre-sentence investigation (PSI), the trial court proceeded to sentence appellant to a prison term of 4 years upon both Counts I and II, to be served concurrently.

{¶29} Appellant now appeals from the trial court's May 10, 2021 Judgment Entry of conviction and sentence.

{¶30} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶31} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS TO LAW ENFORCEMENT MADE ON JUNE 2, 2020."

**ANALYSIS**

{¶32} In his sole assignment of error, appellant argues the trial court should have granted his motion to suppress his statements made to Fumi in the hospital room. We disagree.

{¶33} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶34} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial

court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶35} In the instant case, appellant argues the trial court should have suppressed his statements made to Fumi at the hospital because appellant did not believe he was free to leave. The trial court concluded that appellant was not in custody or subject to a custodial interrogation such that *Miranda* warnings would be required.

{¶36} The Fifth Amendment to the United States Constitution guarantees that "'[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.' " (*ellipses sic.*) *Miranda v. Arizona,* 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can " 'undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely.' " (*ellipsis sic.*) *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), *quoting Miranda*

at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶37} Pursuant to *Miranda*, therefore, statements stemming from custodial interrogations are admissible only after a showing that the procedural safeguards have been followed. "Custody" is when a defendant is taken into custody "or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda* at 478. The relevant inquiry is whether a reasonable person under those circumstances would have felt they were under arrest. *State v. Schlupp,* 5th Dist. Coshocton No.2012CA0007, 2012–Ohio–6072.

{¶38} In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda, supra.* If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. *Id.,* at 476.

{¶39} As the case law developed, trial courts were to determine whether a reasonable person under the circumstances would think he or she was under arrest. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The custody must be under the control of the state. *State v. Giallombardo*, 29 Ohio App.3d 279, 504 N.E.2d 1202 (11th Dist.1986). As noted in *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), it is the fact of custody, not its purpose that controls. As Justice White wrote in *Minnesota v. Murphy*, 465 U.S. 420, 433, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), "[c]ustodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officer's will and to confess."

{¶40} Appellant argues he was not free to leave the hospital and was therefore subject to a custodial interrogation. The mere fact of appellant's hospitalization during the interview is not sufficient to establish he was in custody such that *Miranda* warnings are required prior to questioning by law enforcement. See, *State v. Phillips*, 5th Dist. Knox No. 17CA25, 2018-Ohio-2652, ¶ 30-32 [hospital interview did not reflect police coercion, show of authority, or intimidation such that appellant was "in custody"]; *State v. Hill*, 5th Dist. Licking No. 95-CA-93, 1996 WL 132401, *2 [appellant not in custody during taped interview at hospital for purposes of *Miranda* because appellant not formally restrained, remained at the hospital for treatment purposes following the interview, and reasonable person in appellant's position would not believe that he or she was in custody]; *State v. Smith*, 5th Dist. Licking No. 2007-CA-100, 2008-Ohio-2680, ¶ 24 [appellant not in custody when officer questioned him at hospital and record does not contain any evidence appellant's injuries were so serious he was unable to make a voluntary statement]; *State v. Young*, 5th Dist. Licking No. 00 CA 84, 2001 WL 1775392, *2 [appellant not in custody during questioning at hospital even though he asked detective whether he would be arrested and detective advised he was not arrested at the present time but strong likelihood of arrest existed upon release from the hospital, appellant was not formally restrained during hospital stay, following interview he remained at hospital for treatment purposes, and reasonable person in appellant's position would not believe he was in custody].

{¶41} In the instant case, we note appellant was transported to one hospital, then another, due to self-inflicted trauma; there was not a police or security presence upon his arrival at OSU. Appellant was unaware of a notation in his chart stating "hold patient per

ED requirements," and that notation referenced appellant's attempts at self-harm and whether he would be "pink-slipped." Appellant was not restrained or handcuffed, and was repeatedly told he was not under arrest. Hospital personnel advised that no staff was available to "hold" appellant if he was medically released. Appellant argues he had no clothes or cell phone available to him, but those terms were due to his treatment as a patient in a hospital, not to any police action or coercion. While appellant was being treated for self-inflicted trauma at OSU, the conditions were not under the control of the officer. *State v. Schlupp*, 5th Dist. Coshocton No. 2012 CA 0007, 2012-Ohio-6072, ¶ 73. Fumi asked appellant if they could talk, but did not place him under arrest. *Id.*

{¶42} Based on the facts and circumstances of this case, the trial court did not err in overruling the motion to suppress statements made in the hospital. Appellant was not arrested until he was released from the hospital. *Schlupp*, supra, 2012-Ohio-6072, ¶ 74. The evidence reflects Fumi did not intend to arrest appellant until after appellant admitted to the sexual abuse. Appellant was not in custody when Fumi interviewed him at the hospital. *Id.*

{¶43} We conclude, therefore, that the trial court has correctly decided the ultimate issue raised in appellant's motion to suppress, and appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶44} Appellant's sole assignment of error is overruled and the judgment of the

Licking County Court of Common Pleas is affirmed

By: Delaney, J.,

Baldwin, P.J. and

Wise, Earle, J., concur.